Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| IRON EAGLE INC | § | |
| . | § | CASE 23-42145 |
| | § | |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF IRON EAGLE, INC PURSUANT TO SECTION 1190**
**OF THE BANKRUPTCY CODE DATED FEBRUARY 6, 2024**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Iron Eagle, Inc., ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on November 9, 2023. The Debtor operates an excavation company. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the creditors of Debtor.

## Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V"). Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

## Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**. Claimants in Classes 1 and 14 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 13 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 13. Each holder of an Allowed Claim in Classes 2 through 13 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### ARTICLE II
### DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.    "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.  **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.  **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.  **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.  **"Case"** shall mean this Chapter 11 case.

7.  **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.  **"Claimant"** shall mean the holder of a Claim.

9.  **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13. **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. **"Creditor"** shall mean any person having a Claim against Debtor.

15. **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. **"Debtor"** shall mean Iron Eagle, Inc.

17. **"Disbursing Agent"** shall mean the Reorganized Debtor even in the event of a confirmation under 11 U.S.C. §1191(b).

18. **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19. **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21. **"Final Confirmation Date"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, November 9, 2023.

24. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.     **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.     **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.     **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

30.     **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31.     **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32.     **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

III
REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN

ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTOR

Iron Eagle, Inc. was formed on May 7, 2019 in the State of Texas by Brandon Weinlein. Mr. Weinlein has extensive experience in the excavation business. in its first year of operations the Debtor generated more than $1,000,000 in revenue.

In the months of January, February and March of 2020 the company did just under a million dollars in billed revenue. In March of 2020 COVID hit. Trying to collect on those receivables was a different story. Through a lot of hard work and perseverance, the company was able to prevail with the help of the PPP and an EIDL loan. Business continued, but receivables began to accrue.

In 2022 and 2023, the Debtor began having difficulty with certain General Contractors not paying their invoices. The Debtor had been dealing with Tegrity Contractors and Ratcliff Constructors. The Debtor provided excavation services for 3 schools that it has not been paid on. All 3 of these projects have bond claims against them totaling over $420,000.00. In July and August

of 2023 Ratcliff stopped paying the Debtor which began a very difficult time because the Debtor had the majority of their staff on 2 of the school projects. This began a downhill spiral due to new jobs not starting because of higher interest rates and Owners waiting on beginning their projects. Bond Claims have been sent out.

Presently the Debtor has over $3,000,000.00 in awarded projects which are beginning in February, March and April, 2024.

### Post Petition Operations

### Future Income and Expenses Under the Plan

The Debtor filed this case on November 9, 2023 and has been able to continue operations since the case was filed. The Debtor has struggled throughout the case to collect its receivables. The Debtor's backlog of work remains strong and projects on the books have started to begin. The Debtor intends to continue operations. Attached hereto as Exhibit "A" are projections of gross income, expenses and operating income for the next year. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Brandon Weinlein. After confirmation the ownership will remain the same.

### ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates an excavation company. The Debtor's major assets consist of the equipment the Debtor uses for operations and its accounts receivable. The value of the Debtor's assets, if liquidated, would not provide a greater dividend to the unsecured creditors than proposed under this Plan.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B".**

### ARTICLE VI
### SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 14 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $20,000.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimant (Allowed Internal Revenue Service Claims)** are impaired and shall be satisfied as follows: The Allowed Amount of Allowed Internal Revenue Service Claims shall be paid out of the revenue from the continued operations of Debtor. The Internal Revenue Service (IRS) has filed a Priority Proof of Claim in the amount of $10,000. The claim is based upon an unfiled corporate tax return for 2023. Debtor would show when the return is filed it will not owe any monies to the IRS on this claim. However, the Debtor believes it owes the IRS for past due 941 taxes. Based upon its records the Debtor would show the amount due the IRS for 941 taxes is $465,385. The IRS Allowed Priority Claim it will be paid in full over a 60 equal monthly payments commencing on the Effective Date, with interest at a rate of 7% per annum.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a) If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the

              successor in interest or Debtor is in default.
- ( b ) If the United States declares the debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.
- ( c ) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.
- ( d ) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.
- ( e ) All payment will be sent to: Chastina McMillion/ IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

      The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of DFW to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

      The Class 2 claimant is impaired under this Plan.

      **Class 3 Claimant (Allowed Secured Claim of the Texas Workforce Commission**) is impaired and shall be satisfied as follows:: the Texas Workforce Commission ("TWC") has filed a Proof of Claim asserting a claim for unemployment taxes in the amount of $38,592.31. This claim is based upon the estimated taxes due to the Debtor's failure to file certain returns. Once the returns are filed the Debtor believes this claim will be substantially reduced. To the extent the TWC's Proof of Claim is allowed, the Debtor shall pay the priority amounts in the TWC Proof of Claim in full with interest at the rate of 9.5% per annum in 55 equal monthly payments commencing on the Effective Date.

      Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the TWC: (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the TWC in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the TWC to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the TWC of an administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the TWC, the interest rate shall be the statutory rate of interest, currently 9.5% per annum; and (5) the TWC are not required to file a motion or application for payment of administrative expense claims; the TWC's

administrative expense claims are allowed upon filing, subject to objection on substantive grounds. All post-petition taxes owing to a TWC shall be paid in full on the Plan's Effective Date.

The priority tax claim owed to the Texas Workforce Commission shall be paid in full within sixty (60) months of the Debtor's bankruptcy petition date. Payments shall be in equal monthly installments of principal and accrued interest. The first installment is due within thirty (30) days of the Plan's effective date. The Texas Workforce Commission's priority tax claim shall accrue interest at the statutory rate of interest, currently 9.5% per annum, from the Plan's effective date until paid in full.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

The Class 3 claimant is impaired under this Plan.

**Class 4 Claimant (Allowed Secured Claim of Small Business Administration)** are impaired and shall be satisfied as follows: Small Business Administration ("SBA") has filed a Proof of Claim asserting a secured claim in amount of $165,884. On or about March 27, 2020, the Debtor executed that certain Promissory Note and Loan Security Agreement with the SBA ("Note"). Claim"). The SBA has filed a Proof of Claim in the amount of $165,884. The SBA Note is secured by, among other things, the accounts receivable of the Debtor. The SBA shall have a secured Proof of Claim in the amount of $165,884. The SBA secured claim shall be paid with interest at the rate of 3.75% per annum. The SBA shall receive monthly payments in the amount of $731 commencing on the Effective Date until paid in full. The SBA shall maintain its liens on the Debtor's property until paid in full under the terms of this Plan.

The Class 4 Claimant is impaired under this Plan.

**Class 5 Claimant (Allowed Secured Claim of Mazon Associates, Inc.**) is impaired and shall be satisfied as follows: On or about September 2, 2020, the Debtor executed that certain Factoring Agreement and Security Agreement ("Agreement") with Mazon Associates, Inc. ("Mazon"). On or about, March18, 2022, Debtor executed that certain Security Agreement Note ("Note") with Mazon in the original principal amount of $90,000. The Note superceded the Agreement and was secured by the accounts receivable of Debtor. Mazon has filed a Proof of Claim in the amount of $66,725.66. Mazon shall have a secured claim in the amount of $66,725.66 ("Mazon Secured Claim").The Mazon Secured Claim shall be paid in 60 equal monthly installments commencing on the Effective Date with interest at the rate of 8.5% per annum. Mazon shall retain its lien on the Debtor's accounts until paid in full under the terms of this Plan.

The Class 5 Claimant is impaired under this Plan.

**Class 6 Claimant (Allowed Secured Claim of Ally Bank)** is impaired and shall be satisfied as follows: On or about January 29, 2020, the Debtor executed that certain COMTrac Lease Agreement ("Agreement #1 ") with Ally Bank ("Ally"), for the purchase of that certain 2019 Ford 250 Supercab VIN 1FT7X2B69KEG23582 ("Vehicle). Ally has filed a Proof of Claim in the amount of $25,942.41. Ally shall have a secured claim in the amount of $25,942.41 ("Ally Secured Claim #1"). On or about January 29, 2020, the Debtor executed that certain COMTrac Lease Agreement ("Agreement #2 ") with Ally, for the purchase of that certain 2019 Ford 150 Crew Cab VIN 1FTEW1E41KFC11780 ("Vehicle). Ally has filed a Proof of Claim in the amount of $19,698.22. Ally shall have a secured claim in the amount of $19,698.22 ("Ally Secured Claim #2").The Ally Secured Claims shall be paid in 60 equal monthly installments commencing on the Effective Date with interest at the rate of 5% per annum. Ally shall retain its lien on the Vehicles until paid in full under the terms of this Plan.

The Class 6 Claimant is impaired under this Plan.

**Class 7 Claimant (Allowed Secured Claim of Rockwall Ford Mercury)** is impaired and shall be satisfied as follows:.On or about December 11, 2023, the Court entered an Agreed Order between the Debtor and Rockwall Ford Mercury ("Rockwall"). Rockwall has filed a Proof of Claim in the amount of $5,618.33. Pursuant to the terms of the Agreed Order the Debtor shall pay Rockwall monthly payments of $468.20 commencing on January 15, 2024 and continuing until the Rockwall Proof of Claim has been paid in full.

The Class 7 Claimant is impaired under this Plan.

**Class 8 (Allowed Secured Claim of Caterpillar Financial Services Corp)** is impaired and shall be satisfied as follows: On or about April 7, 2021, the Debtor executed that certain Installment Sale Contract ("Contract #1) with Holt Texas, Ltd ("Caterpillar")[1] for the purchase of that certain 2017 Caterpillar CS44B Vibratory Compactor s/n 4G300101 ("Compactor"). On or about March 19, 2021, the Debtor executed that certain Installment Sale Contract ("Contract #2) with Holt Texas, Ltd ("Caterpillar")[2] for the purchase of that certain 2021 Caterpillar 963- 12 Tract Loader s/n LTT00385 ("Loader"). Caterpillar has filed a secured Proof of Claim in the amount of $229,570.94. Caterpillar shall have a Secured Claim in the amount of $229,570.94 ("Caterpillar Secured Claim"). Debtor shall pay the Caterpillar Secured Claim in 60 equal monthly payments with 5% interest per annum commencing on the Effective Date. Caterpillar shall maintain its liens of the Loader and Compactor until paid in full under the terms of this Plan.

---

[1] Upon information and belief, Holt Texas, Ltd., assigned its interest in Contract #1 to Caterpillar Financial Services Corp.

[2] Upon information and belief, Holt Texas, Ltd., assigned its interest in Contract #1 to Caterpillar Financial Services Corp.

The Class 8 creditor in impaired under this Plan.

**Class 9 (Allowed Secured Claim of Kubota Credit Corporation)** is impaired and shall be satisfied as follows: On or about March 10, 2021, the Debtor executed that certain Retail Installment Contract ("Contract") with Kubota Credit Corporation ("Kubota") for the purchase of that a Kubota SVL95-2SHFC s/n KBCZ063CCL1L53939;Kubota 80" Bucket APHD80LLT; Land Pride 80" Bucket APHD80LLY s/n 1598428; Land Pride 84" Box Blade s/n 1067107K; and Land Pride APPFL5648 Fork Carriage s./n 1087212K (collective "Kubota Collateral").Kubota has filed a Proof of Claim in the amount of $49,186.43. Kubota shall have a Secured Claim in the amount of $49,186.43 ("Kubota Secured Claim"). Debtor shall pay the Kubota Secured Claim in 60 equal monthly payments with 5% interest per annum commencing on the Effective Date. Kubota shall maintain its liens of the Kubota Collateral until paid in full under the terms of this Plan.

The Class 9 creditor in impaired under this Plan.

**Class 10 (Allowed Secured Claim of Komastsu Financial Limited Partnership)** is impaired and shall be satisfied as follows: On or about March 18, 2021, the Debtor executed that certain Security Agreement - Conditional Sales Contract ("Contract") with Komatsu Financial Limited Partnership ("Komatsu") for the purchase of that certain Komatsu PC360LCi-11, Hydraulic Excavator w/Bucket s/n A38359; 3 Top Con base stations s/n 1122-22889,1122-22600 and 1122-22934 and a TopCon Base Station and Rover s/n 1448-20065 ("Komatsu Collateral"). Komatsu has filed a secured Proof of Claim in the amount of $252,740.46. Komatsu shall have a Secured Claim in the amount of $252,740.46 ("Komatsu Secured Claim"). Debtor shall pay the Kamatsu Secured Claim in 60 equal monthly payments with 5% interest per annum commencing on the Effective Date. Komatsu shall maintain its liens of the Komatsu Collateral until paid in full under the terms of this Plan.

The Class 10 creditor in impaired under this Plan.

**Class 11 (Allowed Secured Claim of Impact Machinery LLC)** is impaired and shall be satisfied as follows: On or about February 15, 2023, the Debtor executed that certain Equipment as/is Rental Agreement ("Lease") with Impact Machinery, LLC ("Impact") for the use of that certain 2022 Komatsu GD655-6 w/FH915 TopCon System s/n 60884 ("Impact Equipment"). Pursuant to the terms of this Plan, Debtor shall reject the Lease and return the Impact Equipment to Impact.

The Class 11 creditor in impaired under this Plan.

**Class 12 (Allowed Secured Claim of Iron Capital Rentals (USA) Inc**.) is impaired and shall be satisfied as follows: On or about February 8 , 2022, the Debtor executed a Rent to Purchase Agreement ("Agreement #1") with Iron Capital Rentals (USA) Inc ("Iron Capital") for the rent to own of a 2019 John Deere 350 GLC Excavator s/n 1FF360GXCKF913896 ("Iron Capital Collateral #1"). On or about February 8 , 2022,  the Debtor executed a Rent to Purchase Agreement ("Agreement #2") Iron Capital for the rent to own of a 2019 John Deere 333GM Skid Steer S/N 1TO333GMTHF363585 ("Iron Capital Collateral #2"). On or about February 8 , 2022, the Debtor executed a Rent to Purchase Agreement ("Agreement #3") with Iron Capital  for the rent to own of a 2020 John Deere 750k Dozer s/n 1T0750KXVF365551 ("Iron Capital Collateral #3"). On or about February 8 , 2022,  the Debtor executed a Rent to Purchase Agreement ("Agreement #4") Iron Capital for the rent to own of a 2020 John Deere 850 Dozer s/n 1T0850LXALF369119. Pursuant to the terms of this Plan, Debtor shall reject Agreement #1, Agreement #2, Agreement #3 and Agreement #4 and return the Iron Capital Collateral #1, Iron Capital Collateral #2, Iron Capital Collateral #3 and Iron Capital Collateral #4 to Iron Capital.

The Class 12 creditor in impaired under this Plan.

**Class 13 (Unsecured Creditors)** are impaired under the Plan and shall be satisfied as follows: The Allowed Claims of Unsecured Creditors  shall receive their pro rata portion of payments made by the Debtor into the Class 13 Creditors Pool. This Class shall specifically include any claims of Forward Financing, LLC. The Debtor shall make 36 monthly payments of $5,000 each commencing on the Effective Date. The Debtor shall make distributions to the Class 13 Allowed Claims every 90 days commencing 90 days after the Effective Date..

The Class 13 Creditors are impaired under this Plan.

**Class 14 (Current Equity Holders**) are not  impaired under the Plan and shall be satisfied as follows: The Current Equity Holders shall retain his  current ownership interests.

The Class14 Equity Holders are not impaired by the Plan.

# ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

# ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In Debtor's case the assets the Debtor maintains are subject to valid security interest of secured creditors. At a forced sale the Debtor believes the actual amount received would be than the amount proposed to be aid under the Plan, therefore, a liquidation would not result in a distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected except the current lease with its Landlord which is specifically assumed by this Plan.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to Reorganized Debtor at Brandon Weinlein at brandon@ironeagleexcavation.com. The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case all creditors will be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate.

Dated: February 6, 2024.

Respectfully submitted,

Iron Eagle, Inc

By: Brandon Weinlein
Its: President

EXHIBIT 'B'

# IRON EAGLE EXCAVATION
## 2024 Budget
### January - December 2024

| | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-24 | Feb-25 | Mar-25 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Income | $ 165,625.12 | $ 165,781.00 | $ 172,682.02 | $ 173,550.00 | $ 173,268.00 | $ 173,695.00 | $ 173,842.00 | $ 176,452.00 | $ 178,087.00 | $ 179,348.00 | $ 176,858.00 | $ 179,032.00 | $ 2,088,220.14 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| Equipment Hauling/Transport | 3,000.00 | 3,500.00 | 3,800.00 | 3,800.00 | 4,193.00 | 4,193.00 | 4,193.00 | 4,193.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 33,872.00 |
| Equipment Rental - COS | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 9,037.28 | 81,335.52 |
| Equipment Repairs/Service-Iron Eagle's | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 |
| Estimating-Surveying | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 |
| Excavation Materials | 33,125.02 | 33,156.20 | 34,536.40 | 34,710.00 | 34,653.60 | 34,739.00 | 34,768.40 | 35,290.40 | 35,617.40 | 35,869.60 | 35,371.60 | 35,806.40 | 331,727.08 |
| Total Cost of Goods Sold | $ 50,162.30 | $ 50,693.48 | $ 52,373.68 | $ 52,547.28 | $ 52,883.88 | $ 52,969.28 | $ 52,998.68 | $ 53,520.68 | $ 52,654.68 | $ 52,906.88 | $ 52,408.88 | $ 52,843.68 | $ 506,934.60 |
| Gross Profit | $ 115,462.82 | $ 115,087.52 | $ 120,308.34 | $ 121,002.72 | $ 120,384.12 | $ 120,725.72 | $ 120,843.32 | $ 122,931.32 | $ 125,432.32 | $ 126,441.12 | $ 124,449.12 | $ 126,188.32 | $ 1,459,256.75 |
| **Expenses** | | | | | | | | | | | | | |
| Advertising & Marketing | | | 500.00 | | | | | | | | 292.00 | | 2,112.00 |
| Automobile Expense | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 2,830.00 | 1,200.00 | 1,200.00 | 16,030.00 |
| Bank Charges & Fees | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 300.00 |
| Fuel | 8,281.26 | 8,289.05 | 8,634.10 | 8,677.50 | 8,663.40 | 8,684.75 | 8,692.10 | 8,822.60 | 8,904.35 | 8,967.40 | 8,842.90 | 8,951.60 | 104,411.01 |
| Insurance | 4,767.80 | 4,767.80 | 4,767.80 | 4,767.80 | | | | | 3,200.00 | 4,767.80 | 4,767.80 | 4,767.80 | 49,374.60 |
| Interest Paid | | | | 765.97 | | | | 0.00 | 155.44 | 362.95 | | | 1,284.36 |
| Job Supplies | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 505.47 | 6,065.64 |
| Legal & Professional Services | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 |
| Office Supplies & Software | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 14,400.00 |
| Payroll Expenses | 62,656.00 | 62,656.00 | 66,656.00 | 66,656.00 | 68,656.00 | 68,656.00 | 68,656.00 | 68,656.00 | 68,656.00 | 68,656.00 | 68,656.00 | 68,656.00 | 807,872.00 |
| Postage & Delivery | 54.22 | | | | 31.50 | | | | | 31.50 | | 128.01 | 245.23 |
| Reimbursable Expenses | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Rent & Lease | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 38,400.00 |
| Subcontractors/1099 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 20,400.00 |
| Telephone Expense | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 426.72 | 5,120.64 |
| Total Expenses | $ 86,316.47 | $ 86,270.04 | $ 91,115.09 | $ 91,644.46 | $ 91,328.09 | $ 91,317.94 | $ 91,325.29 | $ 91,455.79 | $ 91,692.98 | $ 94,972.84 | $ 93,115.89 | $ 93,060.60 | $ 1,093,615.48 |
| Net Operating Income | $ 29,146.35 | $ 28,817.48 | $ 29,193.25 | $ 29,358.26 | $ 29,056.03 | $ 29,407.78 | $ 29,518.03 | $ 31,475.53 | $ 33,739.34 | $ 31,468.28 | $ 31,333.23 | $ 33,127.72 | $ 365,641.28 |
| Net Income | $ 29,146.35 | $ 28,817.48 | $ 29,193.25 | $ 29,358.26 | $ 29,056.03 | $ 29,407.78 | $ 29,518.03 | $ 31,475.53 | $ 33,739.34 | $ 31,468.28 | $ 31,333.23 | $ 33,127.72 | $ 365,641.28 |
| | | | | | | | | | | | | | |
| **Plan payments** | | | | | | | | | | | | | |
| IRS | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 9215 | 110580 |
| TWC | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 535 | 6420 |
| SBA | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 8772 |
| Mazon | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 1370 | 16440 |
| Ally | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 10272 |
| Rockwall | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 5616 |
| Caterpillar | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 4331 | 51972 |
| Kobuta | 928 | 928 | 928 | 928 | 928 | 928 | 928 | 928 | 928 | 928 | 928 | 928 | 11136 |
| Komatsu | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 4770 | 57240 |
| unsecured | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 |
| | | | | | | | | | | | | | |
| total | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 28204 | 338448 |

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS |  |  |
| Cash | 5,000 | 5,000 |
| Office equipment | 1,000 | 2,500 |
| A/R | 300,000[3] | 900,000 |
| EQUIPMENT | 900,000 | 900,000 |
|  |  |  |
| LIABILITIES |  |  |
| ADMINISTRATIVE | 20,000 | 20,000 |
| TAXES | 550,000 | 550,000 |
| SECURED CREDITORS | 825,000 | 825,000 |
| UNSECURED CREDITORS | 850,000 | 850,000 |
|  |  |  |
| DISTRIBUTION TO UNSECURED | 0% | 20% |

---

[3]The Debtor would show it has $900,000 in A/R however at least $400,000 of that is disputed and will need to be litigated to recover. Additionally, of the remaining A/R, the debtor has discounted this amount based upon the Chapter 7 Trustee being unable to honor the warranty provided by Debtor.